EDWIN A. LOMBARD, Judge.
The Appellants, Chicago Property Interests, L.L.C. and Zoe Aldige, individually and on behalf of those similarly situated, seek review of the February 14, 2014 judgment of the trial court dismissing their class action claims with prejudice. Finding that the trial court did not err, we affirm the judgment.
Facts and Procedural History
This class action suit arose as a result of post-Hurricane Katrina flooding in Jefferson Parish. In October 2005, the Appellants — who owned property in Jefferson Parish (“the Parish”) when Hurricane Katrina made landfall — filed suit against the Appellees, Aaron Broussard, Jefferson *1077 Parish, Consolidated Drainage District No. 2, and their insurers. The Appellants alleged that the principal cause of flooding in the Parish was Mr. Broussard’s order to evacuate drainage operators during Hurricane Katrina. The Appellants alleged that they suffered damages from Hurricane Katrina-related flooding after Hurricane Katrina ended.
Mr. Broussard moved for summary judgment in December 2007, asserting that he did not order the evacuation of pump operators, nor did he draft or order the implementation of the Parish’s Doomsday Plan. He further asserted that he was immune from fault under La.Rev.Stat. 29:735 A(l). His motion, however, was | gdenied by the trial court. Mr. Broussard subsequently applied for writs. In writ application number 08-C-300, the Fifth Circuit denied his writ application.
Later, on January 17, 2008, the Appellants filed their Supplemental and Amending Class Action Administrative Petition for Damages, alleging that the Appellees acted negligently in “failing to properly draft, implement, distribute, and/or review” the Doomsday Plan, a two-page appendix to the Parish’s Emergency Operations Plan that mandated evacuation of “critical employees,” including pump operators, to Mt. Hermon, Louisiana. Additionally, the Appellants alleged that a change from the existing Armstrong Airport evacuation site to Mt. Hermon 100 miles away was never approved.
Mr. Broussard filed a second motion for summary judgment on the issue of “willful misconduct”, in August 2013. The trial court denied the motion finding that genuine issues of material fact remained as to his involvement in the emergency and in the Doomsday Plan. This Court denied his writ application, no. 2013-C-1647, seeking review of the denial of his motion for summary judgment.[1]
Thereafter, in October 2013, the trial court issued an order bifurcating the issues of liability and damages for trial. The jury trial on liability was held from January 13, 2014 to February 5, 2014.[2] On February 5, 2014, the jury rendered a verdict finding that the Appellees were not at fault. At the Appellants’ request, the jury was polled via polling forms. The initial polling resulted in ten (10) “yes” votes and two (2) “no” votes. However, it was later revealed one juror incorrectly wrote her verdict. The trial court conducted a second poll at the Appellants’ | arequest. The results of the second polling were nine (9) “yes” votes for the defense verdict and three (3) “no” votes. The Appellants requested that the jury be polled as to each interrogatory on the verdict form. However, this request was denied.
On February 14, 2014, the trial court signed a judgment adopting the jury’s verdict in favor of the Appellees[3] and “against all plaintiffs [Appellants] in all consolidated actions, dismissing all claims of all plaintiffs with prejudice at plaintiffs’ [Appellants’] cost.” The Appellants timely filed their Notice of Appeal in the Fifth Circuit. After the appellate record was *1078 lodged, the Fifth Circuit recused itself, and this appeal was transferred to our Court.
The Appellants raise six (6) assignments of error for review:
1. The trial court failed to properly charge the jury on the apportionment between natural causes and human actions;
2. The trial court erred in not having the jury first determine whether “emergency preparedness” immunity existed before it considered the “willful” misconduct exception to that immunity;
3. The trial court erred in providing the jury with an internet definition of “willful misconduct” that inaccurately presented Louisiana law;
4. The trial court erred in refusing the Appellants their right to poll the jurors;
5. The trial court erred in precluding the Appellants from eliciting testimony regarding the regulations set forth in 33 C.F.R. § 208.10; and
6. The trial court erred in precluding the Appellants from eliciting testimony regarding the Louisiana Homeland Security Act.
| ¿Failure to Properly Charge the Jury
In their first assignment of error, the Appellants contend that the trial court failed to properly charge the jury on the apportionment between natural causes and human actions. They assert three (3) arguments in connection with this assignment of error: 1) there were defects with the jury instruction; 2) there was undisputed evidence that flooding in the Parish would have been substantially reduced with operational pumps; and 3) the impact of the improper instructions caused juror confusion. However, we note, and the Appellants admit, that they did not properly preserve their objection to the jury instructions for appeal.
Louisiana Code of Civil Procedure Article 1793(C) provides:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury. [Emphasis added].
Nevertheless, if jury instructions or interrogatories contain a “plain and fundamental” error, the contemporaneous objection requirement is relaxed and appellate review is permitted. Berg v. Zummo, 00-1699, p. 13 (La.4/25/01), 786 So.2d 708, 716, n. 5; Murphy v. Jefferson Health Care Center LLC, 09-304, p. 4 (La.App. 5 Cir. 10/27/09), 27 So.3d 899, 901. A plain and fundamental error has been defined to mean one “so fundamental as to result in a miscarriage of justice.” Branch-Hines v. Hebert, 939 F.2d 1311, 1319 (5th Cir.1991).
The Appellants did not make a contemporaneous objection on the record. Nevertheless, they assert, on appeal, that an objection was unnecessary because the alleged errors constitute “plain and fundamental” legal errors.
Having reviewed the jury charges in the matter sub judice, we do not find that “plain and fundamental” errors exist. Consequently, the Appellants are precluded from raising this assignment of error because they did not object to the jury charges at trial.
Emergency Preparedness
In their second assignment of error, the Appellants argue that the trial court erred in the manner in which it presented the jury interrogatories regard *1079 ing the emergency preparation immunity of the Louisiana Homeland Security and Emergency Assistance and Disaster Act (“the Act”), La.Rev.Stat. 29:721, et seq. The jury was asked in Interrogatory No. 8: “Do you find that employees of Jefferson Parish and/or the Consolidated Drainage District No. 2 acted with willful misconduct with regard to emergency preparedness activities during and around the time of Hurricane Katrina and addressing Hurricane Katrina particularly?” The jurors responded -“no” to this question. The Appellants contend that the jury should have first been asked whether Mr. Broussard and his employees were entitled to “emergency preparedness” immunity.[4] The inquiry into whether these persons made an “instantaneous decision during a crisis”, they aver, was a prerequisite to deciding if the Appellees acted with willful misconduct.
| ;;The record shows, however, that the Appellants did not object to Interrogatory No. 8, or the lack of an interrogatory addressing the applicability of “emergency preparedness” immunity, at trial. As mentioned in the previous assignment of error, the rule that a party cannot claim improper jury charges as error where he or she fails to timely object to the charges also applies to jury interrogatories. Hebert v. Old Republic Ins. Co., 01-355, p. 16 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1127 [citations omitted]; La.Code Civ. Proc. art. 1793(C). Nevertheless, this requirement is relaxed when the jury interrogatories contain a “plain and fundamental” error. Berg, 00-1699, p. 13, 786 So.2d at 716, n. 5. Upon our review of the interrogatories, we do not find that a “plain and fundamental” error exists.
Lastly, we recognize that pursuant to La.Code Civ. Proc. art. 1812,[5] the trial court is given wide discretion in determining and framing questions to be posed as special jury interrogatories, and absent some abuse of that discretion, this court will not set aside those determinations. Wiltz v. Bros. Petroleum, L.L.C., 13-332, p. 20 (La.App. 5 Cir. 4/23/14), 140 So.3d 758, 773, on reh’g (5/21/14), unit denied, 14-1252 (La.10/10/14), 151 So.3d 581 and writ denied, 14-1298 (La.10/10/14), 151 So.3d 583. The trial court’s decision to present the jury with interrogatories ad *1080 dressing the willful misconduct exception without first asking if the Appellees were immune from liability is not an abuse of the court’s vast discretion. This is because if the jurors decided that the willful conduct exception was inapplicable, which it did, the Appellees, by default, would be automatically immune from liability under the Act. Consequently, the need to present a prior interrogatory on the issue of immunity was obviated. This assignment of error is without merit.
“Willful Misconduct” Instruction
In their third assignment of error, the Appellants assert that the trial judge committed manifest error by providing the jury with an inaccurate supplemental definition of “willful misconduct”. During jury deliberations, the jury foreperson notified the trial court of the jury’s request for a clearer definition or explanation of “willful' misconduct” than the definition contained in the jury charges. The definition of “willful misconduct” in the jury charges states:
“Misconduct” has been defined as “[a] dereliction of duty; unlawful or improper behavior,” and “willful misconduct” as “misconduct committed voluntarily and intentionally.”
The terms “willful’, ‘wanton’, and ‘reckless’ have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to |sconsequences, amounting almost to a willingness that harm should follow.
Willful misconduct exists when the person at issue has a conscious desire to harm someone and acts on that desire.
The trial court requested that the parties provide a supplemental definition for the jury, but they were unable to agree on one. The Appellees suggested a definition stressing the intentional infliction of harm. However, the Appellants advocated a broader definition from Cates v. Beauregard Elec. Co-op., Inc., 316 So.2d 907, 916 (La.App. 3rd Cir.1975), writ issued sub nom. Cates v. Beauregard Elec. Coop., Inc., 321 So.2d 362 (La.1975) and aff'd, 328 So.2d 367 (La.1976). At trial, they explained this definition as follows:
Willful misconduct can be one of two things. It can be an actual intentional act, or it can be something which is done in a backdrop of the substantial probability — I—I’m not using the magic words—
[[Image here]]
—but where you — you should — the risk is so great, you should know that what you’re doing is going to cause harm.
Nevertheless, the trial court provided the jury with a definition of: “intention, disregard to safety of others.” The Appellants assert that the correct definition of willful misconduct should “not suggest that the action "must involve intentional harm” and the trial court should have given the jury the definition they provided. Moreover, the Appellants assert that the supplemental definition given by the trial court confused the jury because it provided a fourth definition of “willful misconduct”, in combination with allegedly three *1081 definitions contained in the original jury charge.
|9The Appellees respond that the trial judge accurately provided the jury with a “willful misconduct” definition that is consistent with controlling law of the Fifth Circuit, which is applicable in this matter. They "aver that the. controlling definition of “willful misconduct” comes from Haab v. E. Bank Consol. Special Serv. Fire Prot. Disk of Jefferson Parish, 13-954 (La.App. 5 Cir. 5/28/14), 139 So.3d 1174. The definition of “willful misconduct” applied in Haab is:
... only the most egregious conduct by parish agents, employees or representatives that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of “willful misconduct” or “criminal, willful, outrageous, reckless, or flagrant misconduct” resulting in a forfeiture of all the immunity protections afforded by the HSA [the Act] and the DIS [Discretionary Immunity Statute].
Id., 13-954, p. 10, 139 So.3d at 1182.
The Appellees argue that the supplemental definition provided by the trial judge in the instant matter of “intention, disregard to safety of others,” is consistent with the initial jury charge and the definition from Haab. They further assert that the Appellants did not take issue with the original definition of “willful misconduct” provided to the jury, which they agreed to accept. We agree.
The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge’s duty is to correctly charge the jury. Williams v. Bd. of Sup’rs of Univ. of Louisiana Sys., 48,763, p. 22 (La.App. 2 Cir. 2/26/14), 135 So.3d 804, 817, writ denied, 14-0666 (La.5/2/14), 138 So.3d 1249. Adequate instructions are those which fairly and reasonably point out the issues and provide correct principles of daw for the jury to apply to those issues. Adams v. Rhodia, Inc., 07-2110,' p. 6 (La.5/21/08), 983 So.2d 798, 804.
|inThe supplemental definition of “willful misconduct” given by the trial court is consistent with the lengthier definition contained in the jury charges. Furthermore, it is clear from Cates, Haab and the definitions given to the jury that “willful misconduct” encompasses an intention or an active desire to cause harm, or a disregard or “callous indifference” to the risk of potential harm. Thus, we do not find that the trial court erred. This assignment of error is "without merit.
Jury Polling
In their fourth assignment of error, the Appellants allege that the trial court erred in denying their request to poll jurors individually on each interrogatory. They assert that their request was justified given the alleged confusion of the jury and the lack of clarity on the verdict form responses. Moreover, they argue that the second polling revealed that only nine (9) of the twelve (12) jurors supported the verdict: They maintain that jury - polling would have been helpful because: the verdict returned was inconsistent; the jurors were known to have incorrectly recorded their intended verdicts; the number of jurors in support of the supposed verdict was so close; and the jury clearly had difficulties with the statements of the law that they had been provided. The Appellants argue that the trial court’s failure to permit them to exercise their right to poll the jurors was error in this case, and caused them irreparable harm.
There is no statutory or codal authority in Louisiana providing for jury polls in civil cases; nevertheless, the right has been recognized in civil cases jurispru- *1082 dentially. Acosta v. Pendleton Mem’l Methodist Hosp., 545 So.2d 1053, 1058-59 (La.App. 4th Cir.1989) writ denied, 551 So.2d 637 (La.1989) and writ denied, 551 So.2d 638 (La.1989) [citations omitted]. Polling of the jury is the process whereby the trial judge asks each juror after the verdict is announced |nwhether it is his or her verdict. Id. The principal purpose of polling the jury is to ascertain that all votes were counted correctly. McCarter v. Liberty Mut. Ins. Co., 436 So.2d 726, 728 (La.App. 4th Cir.1983), writ denied, 440 So.2d 145 (La.1983).
“If the count after polling is not the same as the count on the verdict form then the judge may, at his discretion, ask the jury to redeliberate, declare a hung jury and grant a new trial, or question the jurors as to their vote when the verdict was signed.” Id. In a civil case, nine of twelve or five of six jurors must vote for a verdict in order for it to be legal. La.Code Civ. Proc. art. 1797. If the polling reveals that the number of votes is insufficient to sustain a verdict, the judge may, in his discretion, order the jury to redeliberate, declare a mistrial or grant a new trial. McCarter, 436 So.2d at 728.
In the matter sub judice, the record shows that the jury was polled twice. Both polls were conducted in •writing. The result of the first polling showed that there were ten (10) “yes” votes for the verdict and two (2) “no” votes against the verdict. After the initial poll, the trial judge notified the parties that a female juror had informed the bailiff that she believed she incorrectly wrote down her vote on the polling form. The trial judge noted that this would result in a verdict of nine (9) “yes” votes and three (3) “no” votes.
The Appellants requested that the jury be re-polled for accuracy. The result of-the second jury poll was nine (9) “yes” votes and three (3) “no” votes. Thereafter, the Appellants requested that the jurors be polled as to each question:
Ms. Jacobs: Your Honor, it should be— re — it should be polled as to each question.
The Court: No.
JjLS •'
The Court: We don’t poll as to each question.
[[Image here]]
The Court: Some people do that, and some people do not. We have this as being their Verdict. It is their Verdict.
The results of both polls reflect that the jury rendered a legal verdict under La.Code of Civ. Proc. art. 1797. As stated above, the purpose of polling the jury is to ensure that the jurors’ votes are correctly counted. This was accomplished by polling the jury twice. Although another judge may have decided to allow the jurors to be polled on the interrogatories, we cannot say that the trial judge abused its discretion. Lastly, the Appellants did not object to the trial court’s refusal to poll the jury on each interrogatory. By failing to make a contemporaneous objection, the Appellants waived their right to raise this issue on appeal. This assignment of error is without merit.
Cross-Examination Errors
In the Appellants’ two (2) remaining assignments of error, they argue that the trial court erroneously precluded them from questioning witnesses regarding federal regulations and a state statute on cross-examination. However, we find that neither of these arguments have merit because the district court did not abuse its discretion, as further discussed below.
a. 33 C.F.R. § 208.10 Testimony
The Appellants contend that the trial court erred in precluding them from *1083 cross-examining Parish Attorney Tom Wilkinson regarding the following issues:
lisl. The applicability of federal regulations, specifically as to 38 C.F.R. § 208.10,[6] pertaining to the pump operators of the Parish;
2. The substance of federal contracts he signed as Parish Attorney, whereby the Parish allegedly accepted federal funds for flood control; and
3. The Parish’s receipt of the federally offered funds.
Their intended line of questioning was related to their contention that the Appel-lees’ Doomsday Plan was non-compliant with the requirements of 33 C.F.R. § 208.10, and that the Appellees acted negligently in developing, implementing and distributing the Doomsday Plan. They further assert that the regulation mandates that competent pump operators must be present at pumping stations in an event that might require pump operation, such as an imminent flooding event. The regulation, they aver, also provides that at a minimum, the Parish was required to develop a contingency plan that would provide for pump operation in the absence |14of the pump operators. They allege that they were precluded from establishing “whether sufficient federal funding was implicated for the C.F.R. to be applicable.” Lastly, the Appellants contend that the pretrial rulings in this matter did not exclude the C.F.R. regulations, questioning regarding said regulations, or their applicability from the permissible and relevant.
The determination of the scope of cross-examination is within the discretion of the trial court. Hill v. Leach, 98-1817, p. 4 (La.App. 3 Cir. 4/21/99), 734 So.2d 116, 118, writ denied, 99-1527 (La.9/17/99), 747 So.2d 1109. These rulings will not be disturbed in the absence of an abuse of discretion. Id.[7]
*1084 The relevant portion of the January 21, 2014 transcript states:
Ms. Jacobs: He signed a document as the Parish Attorney for federal funds from the Army Corp of Engineers. It’s in evidence. We have a copy of it. We got it from the Army Corp of Engineers. I was going to go into that.
The Court: What did you say about that?
|1fiMr. Phayer: I would object to the relevance of any of these federal statutes.
The Court: And I’ve said that. I don’t know how many times I have to say it.
Indeed, the record reflects that the trial judge reasoned, on an earlier day of trial, January 14, 2014, that he did not find that federal law was applied by federal courts in cases involving the 17th Street Canal and the flooding in New Orleans. He further explained that he did not believe that Federal Regulations were “going to be the decisive issue in this case.”[8] Considering the vast discretion of the trial court in this matter, we find that the district court did not abuse its discretion. This assignment of error is without merit.
b. Testimony regarding the Act
Lastly, the Appellants aver that they attempted to question defense witness, Dr. Walter Maestri — the former head of the Emergency Management for the Parish— regarding the Act. Dr. Maestri led the Parish’s Emergency Management Department before and during Hurricane Katrina and authored the Emergency Operations Plan (“EOP”) for the Parish. The EOP was in effect from 1996 through the time that Hurricane Katrina made landfall. The Appellants aver that the Act required each parish establish an office of homeland security, overseen by the parish president, which “shall be responsible for homeland security and emergency preparedness in the parish.” La.Rev.Stat. 29:729(A). They further aver that Dr. Maestri’s position was mandated and created by the Act.
JjjThe Appellants sought to elicit testimony from Dr. Maestri highlighting the Appellees’ violations and lack of compliance with the Act as added proof of the Appellees’ breaches. They attempted to cross-examine Dr. Maestri regarding how the Act factored into the Parish’s analysis and decision-making regarding the EOP. This line of questioning, they assert, was crucial to establishing that the Appellees failed to properly draft, review, distribute, and/or implement an appropriate EOP resulting in widespread flooding in the Parish post-Hurricane Katrina.
The relevant portion of the January 22, 2014 transcript states:
Ms. Jacobs: ... Isn’t it correct, that according to the Emergency Operations Plan, they — it—certain requirements have to be met, from what you can recall about the Plan?
Mr. Phayer: Your Honor, let me object to this witness being questioned on what statutes do or do not provide.
The Court: Sustained.
*1085 Ms. Jacobs: All right. With regard to the — all right, let me ask you a question: Is the Homeland Security and Emergency Preparedness Act an integral part of the development and revision of local and inter-jurisdictional homeland security and emergency plans?
Mr. Phayer: Same objection, Your Hon- or.
The Court: Sustained.
As previously stated, the trial judge has great discretion in determining the scope of cross examination. It does not appear that the trial judge abused his discretion in disallowing this line of questioning.[9] We find that this assignment of error is without merit.
|17DECREE
For the foregoing reasons, the February 14, 2014 judgment rendered in favor of Aaron Broussard, Jefferson Parish, Consolidated Drainage District No. 2, and American Alternative Insurance Corporation, is affirmed.
AFFIRMED

. Thereafter, the Supreme Court denied his application for supervisory writs, writ application no. 2013-CC-2984.

. The Hon. John L. Peytavin, sitting ad hoc, presided because all of the Judges of the 24th Judicial District Court had recused themselves.

. The judgment was rendered specifically in favor of Aaron Broussard, Jefferson Parish, Consolidated Drainage District No. 2, and American Alternative Insurance Corporation.

. La.Rev.Stat. 29:735 is the immunity statute of the Act and provides in part:
A. (1) Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents’ employees or representatives of any of them engaged in any homeland security and emergency preparedness ■ activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall he liable for the death of or any injury to persons or damage to property as a result of such activity. [Emphasis added].

. La.Code Civ. Proc. art. 1812(A), provides: The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.

. 33 C.F.R. § 208.10, entitled Local flood protection works; maintenance and operation of structures and facilities, provides in pertinent part:
(a)(1) The structures and facilities constructed by the United States for local flood protection shall be continuously maintained in such a manner and operated at such times and for such periods as may be necessary to obtain the maximum benefits.
(f) Pumping plants—
(2) Operation. Competent, operators shall be on duty at pumping plants whenever it appears that necessity for pump operation is imminent. The operator shall thoroughly inspect, trial operate, and place in readiness all plant equipment. The operator shall be familiar with the equipment manufacturers’ instructions and drawings and with the "Operating Instructions” for each station. The equipment shall be operated in accordance with the above-mentioned "Operating Instructions” and care shall be exercised that proper lubrication is being supplied all equipment, and that no overheating, undue vibration or noise is occurring. Immediately upon final recession of flood waters, the pumping station shall be thoroughly cleaned, pump house sumps flushed, and equipment thoroughly inspected, oiled and greased. A record or log of pumping plant operation shall be kept for each station, a copy of which shall be furnished the District Engineer following each flood.

. See also La.Code of Evid. Art. 611, entitled Mode and order of interrogation and presentation, which provides in part:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
*1084 B. Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. However, in a civil case, when a party or person identified with a party has been called as a witness by an adverse party to testify only as to particular aspects of the case, the court shall limit the scope of cross-examination to matters testified to on direct examination, unless the interests of justice otherwise require.

. Moreover,, the Appellants, in writ application number 2014-C-0111, sought review of the trial court’s refusal to allow them to question Mr. Wilkinson about the C.F.R. regulations. We denied their writ application on January 24, 2014.

. Furthermore, just as with the C.F.R. issue addressed above, the Appellants also filed a writ application, 2014-C-0117, seeking review of the trial court's ruling. We denied their writ application on January 24, 2014.