STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 0718

MICHAEL CANE AND JOHN CANE

VERSUS

CHARLES O'BRIEN AND UNITED SERVICES AUTOMOBILE
ASSOCIATION

**Judgment Rendered:**     FEB 2 3 2024

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C679294

Honorable Donald R. Johnson, Presiding

* * * * * *

Jason L. Melancon                      Counsel for Plaintiffs/Appellants
Robert C. Rimes                        Michael Cane and John Cane
R. Lee Daquanno, Jr.
Baton Rouge, LA

Claire E. Sauls                        Counsel for Defendants/2nd Appellants
Michael M. Thompson                    Charles O'Brien and United Service
Hannah C. Catchings                    Automobile Association
Baton Rouge, LA

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Chutz, J., Concurs in result

**GUIDRY, C.J.**

In this personal injury action, plaintiffs, Michael Cane and John Cane, appeal from a trial court judgment denying their motion for mistrial and rendering judgment in conformity with the jury's verdict and from a trial court judgment denying their motion for JNOV, alternatively, motion for new trial/additur. Defendants, Charles O'Brien and United Services Automobile Association (USAA), have appealed, challenging the trial court's granting of plaintiffs' motions for directed verdict on the affirmative defenses of *force majeure* and sudden emergency. For the reasons that follow, we vacate the trial court's judgments and remand.

### FACTS AND PROCEDURAL HISTORY

On October 23, 2018, sometime after 10:00 p.m., Michael Cane was driving a 2006 Honda Civic westbound in the inside lane of Interstate 10 in Ascension Parish; his brother, John Cane, was riding in the front passenger seat. The interstate was dark, and the road surface was wet due to intermittent rainfall. While driving in the inside lane, with his cruise set at 70 mph, Michael saw a deer approximately forty yards ahead in the left shoulder close to the interstate. After noticing the deer, Michael remained in the inside lane and slowed to 60 mph; however, when Michael was approximately twenty to thirty feet from the deer, it began moving into the interstate. Michael's vehicle hit the deer, which then went over the hood of Michael's vehicle. Michael then slowed down, almost to a stop, and activated his hazard lights.

Prior to the deer entering the road, a white Dodge Durango, driven by Saed Amleh, was traveling behind the Cane vehicle and a red Mercedes SLK250, driven by Charles O'Brien, was traveling behind the Durango. Seeing the Cane vehicle moving slowly or stopped in the roadway, Amleh swerved to the right and ultimately left the roadway on the right side of the interstate. Once the Amleh vehicle moved from the inside lane, and approximately five seconds after Michael turned on his

2

hazard lights, the Cane vehicle came into O'Brien's view. O'Brien applied his brakes, but his vehicle impacted the Cane vehicle.

Thereafter, on February 6, 2019, Michael and John filed a petition for damages, naming O'Brien and his insurer, USAA, as defendants, asserting that Michael and John sustained severe personal injuries as a result of O'Brien's negligence in failing to see what he should have seen, failing to observe the roadway conditions, failing to yield, and failing to maintain control of his vehicle.

The matter proceeded to a five-day jury trial on August 22-26, 2022. At the conclusion of the presentation of evidence, plaintiffs moved for a directed verdict on defendants' affirmative defenses of *force majeure* and sudden emergency, and the trial court granted the plaintiffs' motions as to both affirmative defenses. The jury subsequently returned a verdict in favor of plaintiffs and against defendants. Counsel for plaintiffs requested a polling of the jury, and the trial court instructed the court clerk to read each question on the jury verdict form and instructed the jurors to answer "yes" or "no" as to whether they voted "yes" or "no" on that question. However, when the court clerk arrived at question number 4 on the verdict form, which asked the jury to assign a percentage of fault to each of the three parties listed on the form, the clerk read the question as written, and each juror responded with a percentage of fault for each party. Based on these individual responses, there were not nine of twelve jurors in agreement on the percentages to be assigned.

At the conclusion of polling, plaintiffs' counsel indicated that he had a motion, and the trial court stated that it would take up all motions outside of the presence of the jury. The trial court thereafter discharged the jury. Plaintiffs' counsel then moved for a mistrial, because there were not nine members of the jury who agreed to all of the allocations of fault for each of the three parties. The trial court directed that the motion for mistrial be reduced to writing and that the merits of the motion

3

be heard at a later date. On September 8, 2022, plaintiffs filed a memorandum in support of the motion for mistrial.

On September 9, 2022, however, the trial court signed a judgment, filed by the defendants over the plaintiffs' objection, which was in conformity with the jury verdict. Thereafter, because the trial court had signed a judgment, the plaintiffs filed a motion to convert their oral motion for mistrial to a motion for new trial and for expedited consideration. Plaintiffs also filed a motion for JNOV or alternatively, motion for new trial/additur.

Following a hearing on all motions, the trial court signed a judgment on October 21, 2022, ordering that the judgment executed by the trial court on September 9, 2022 is null and is vacated. The trial court further denied plaintiffs' motion for mistrial, entered judgment consistent with the jury verdict form submitted by the jury, and denied as moot plaintiffs' motion to convert their motion for mistrial to a motion for new trial. The trial court also denied all remaining pending motions, reserving the rights of the parties to re-file any such motions.

Thereafter, on October 26, 2022, plaintiffs filed a motion for JNOV, or alternatively, motion for new trial/additur and a hearing was set for November 28, 2022. Following the hearing, the trial court signed a judgment on December 19, 2022, in favor of defendants and denied plaintiffs' motion for JNOV, or alternatively, motion for new trial/additur. Plaintiffs now appeal from the trial court's October 21, 2022 and December 19, 2022 judgments. Defendants also appeal from the trial court's granting of plaintiffs' motion for directed verdict on defendants' affirmative defenses of *force majeure* and sudden emergency.

## DISCUSSION

### Polling the Jury

Plaintiffs assert that the trial court erred in denying their motion for mistrial/motion for new trial, when polling of the jury revealed that there were not

4

nine of twelve jurors who agreed on the percentages of fault to be assigned to each party.

There is no statutory or codal authority in Louisiana providing for jury polls in civil cases, but the right has been recognized in civil cases jurisprudentially. Acosta v. Pendleton Memorial Methodist Hospital, 545 So. 2d 1053, 1058-59 (La. App. 4th Cir.), writs denied, 551 So. 2d 637, 638 (La. 1989). Polling of the jury is the process whereby the trial judge asks each juror after the verdict is announced whether it is his or her verdict. Chicago Property Interests LLC v. Broussard, 15-0299, p. 11 (La. App. 4th Cir. 10/21/15), 177 So. 3d 1074, 1082, writ denied, 15-2117 (La. 1/25/16), 185 So. 3d 748. The principal purpose of polling the jury is to ascertain that all votes were counted correctly and that a sufficient number voted in favor of a verdict as required by law. See Chicago Property Interests LLC, 15-0299 at p. 11, 177 So. 3d at 1082 and Acosta, 545 So. 2d at 1059. In a civil case, nine of twelve jurors or five of six jurors must vote for a verdict in order for it to be legal. La. C.C.P. art. 1797(A) and (B). If the polling reveals that the number of votes is insufficient to sustain a verdict, the judge may, in his discretion, order the jury to redeliberate, declare a mistrial, or grant a new trial. Acosta, 545 So. 2d at 1059.

The correct procedure for oral polling of a jury is for the judge or clerk to call each juror, one at a time, announce to the juror the verdict returned and ask the juror, "Is this your verdict?" The juror can only respond "yes" or "no" to each interrogatory. The same procedure should be employed when the jury is polled in writing. Acosta, 545 So. 2d at 1059.

In the instant case, after the jury verdict was read to the court, plaintiffs' counsel requested that the jury be polled. The trial court noted that the concept of polling states that each juror will answer specifically as to each question whether or not that is his or her vote as to each question. The trial court then instructed the court clerk to read each question on the jury verdict form and instructed the jurors to

5

answer "yes" or "no" as to whether they voted "yes" or "no" on that question. However, when the court clerk arrived at question number 4 on the verdict form, which asked the jury to assign a percentage of fault to each of the three parties listed on the form, the clerk read the question as written, and each juror responded with a percentage of fault for each party. Based on these individual responses, there were not nine of twelve jurors in agreement on the percentages to be assigned.

The court clerk continued to poll the jury. Question 6, relating to damages for Michael, asked how much it will take to compensate Michael for his injuries for certain items of damages. The court clerk read the question as written, and each juror responded with an individual dollar amount for past and future medical expenses. The trial court then asked the court clerk to read each sequence of damages and the amount as listed on the verdict form and then ask the juror to voice a poll position. All twelve jurors were in agreement as to the amount of damages for Michael. The trial court then proceeded to questions 7 and 8, which related to damages for John. Question 8 asked how much it will take to compensate John for his injuries for certain items of damages. The court clerk read the question as written, and each juror responded with an amount for each item of damages. There were several jurors who noted that their individual amounts differed from what the jury agreed on, but they stated that they did agree to the amount listed on the verdict form.

The trial court then stated that he was "of the opinion that the jurors have adequately polled as to their individual vote and their final vote" and asked for any further motions for the court. Plaintiffs' counsel indicated that he had a motion, and the trial court stated that it would take up all motions outside of the presence of the jury. The trial court thereafter discharged the jury, and plaintiffs' counsel then moved for a mistrial, because there were not nine members of the jury who agreed to the allocations of fault for each of the three parties.

6

From our review of the record, we find that the trial court procedurally erred in the manner in which it polled the jury. When the court clerk read question 4, rather than asking each juror if the percentages listed on the verdict form represented their vote, the court clerk read the question as written, and each juror responded with their own individual responses. The trial court seemingly recognized the complication presented by strictly reading the questions as written and, during the polling for question 6 relating to damages for Michael, instructed the court clerk to read each item of damages and its amount and then ask each juror to voice a poll position. When the court clerk proceeded to question 8 relating to damages for John, the court clerk read the question as written and each juror responded with their individual answers. However, the few jurors whose answers differed from that on the verdict form expressed that while their individual numbers were different, they were in agreement with the verdict. Unfortunately, while the trial court seemingly corrected the manner of polling, or the jurors clarified their responses, with respect to the damages portion of the verdict form, this was not done with respect to the polling for question 4 relating to allocations of fault.

Further compounding this procedural error, the trial court discharged the jury prior to hearing and considering any motions filed by the parties. Accordingly, we find that when plaintiffs presented the trial court with their motion for mistrial due to jury polling revealing nine of twelve jurors did not agree on the allocations of fault to be assigned to each party, there was no other remedy at that point to afford plaintiffs relief. See Quinn v. State, through the Department of Transportation and Development, 09-0085, p. 5 (La. App. 1st Cir. 12/23/09) 2009WL4981911, writ denied, 10-0358 (La. 4/23/10), 34 So. 3d 268 (unpublished opinion) (stating that a motion for mistrial is appropriate when it is determined that it is impossible to reach a proper judgment because of some error or irregularity and there is no other remedy

7

that would provide relief to the moving party). As such, the trial court abused its discretion in subsequently failing to grant plaintiffs' motion for mistrial.[1]

**Directed Verdict**

Defendants also appeal from the trial court's granting of plaintiffs' motion for directed verdict on defendants' affirmative defenses of *force majeure* and sudden emergency.

Generally, a motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Rabalais v. St. Tammany Parish School Board, 06-0045, 06-0046, p. 6 (La. App. 1st Cir. 11/3/06), 950 So. 2d 765, 769, writ denied, 06-2821 (La. 1/26/07), 948 So. 2d 177. However, if there is substantial evidence opposed to the motion, *i.e.*, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Wright v. Bennett, 04-1944, p. 15 (La. App. 1st Cir. 9/28/05), 924 So. 2d 178, 187.

Evaluations of credibility have no place in a decision on a motion for directed verdict. Making credibility evaluations is one of the primary duties of the jury, and the trial judge may not take this duty from the jury unless the party opposing the motion has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Walker v. Louisiana Health Management Company, 94-1396, pp. 8-9 (La. App. 1st Cir. 12/15/95), 666 So. 2d 415, 421, writ denied, 96-0571 (La. 4/19/96), 671 So. 2d 922.

---

[1] As previously noted, the trial court set plaintiffs' motion for mistrial for hearing. Following the submission of memorandum and preparation of a transcript of the jury polling, the trial court held a hearing and denied plaintiffs' motion.

A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Walker, 94-1396 at p. 9, 666 So. 2d at 421. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the claims. Wright, 14-1944 at p. 15, 924 So. 2d at 187.

The affirmative defense of *force majeure*, or Act of God, is defined as "an unusual, sudden and unexpected manifestation of the forces of nature which man cannot resist." Guy v. Howard Hughes Corporation, 18-0413, p. 5 (La. App. 4th Cir. 12/19/18), 262 So. 3d 327, 330. For the defense to apply, two circumstances must exist: (1) the accident is directly and exclusively due to natural causes without human intervention; and (2) no negligent behavior by the defendant has contributed to the accident. Smith v. Great American Insurance Company, 20-377, p. 4 (La. App. 5th Cir. 5/26/21), 325 So 3d 495, 499.

Additionally, under the sudden emergency doctrine, there is an exception to the general rule that a following motorist is presumed negligent if he collides with the rear of a leading vehicle. The doctrine provides that a following motorist will be adjudged free from fault if the following motorist is suddenly confronted with an unanticipated hazard created by a favored vehicle, which could not be reasonably avoided, unless the emergency is brought about by the following motorist's own negligence. Ly v. State Through the Department of Public Safety and Corrections, 633 So. 2d 197, 201 (La. App. 1st Cir. 1993), writ denied, 93-3134 (La. 2/25/94), 634 So. 2d 835.

In the instant case, in granting plaintiffs' motions for directed verdict, the trial court stated that "[t]he issues are close—these issues and facts are close. It's not a bright light in my mind and judgment based upon what I have listened to all week and heard. Over objection, the court grants each motion. That is, the court grants

the motion on force majeure and sudden emergency." From our review of the evidence and testimony in the record, it is clear that a deer entered the interstate and moved into the path of the Cane vehicle. Defendants presented testimony from several witnesses that the accident at issue happened quickly, within seconds. Additionally, O'Brien stated that he was traveling at a standard distance behind the vehicles in front of him and that, when the vehicle in front of him abruptly swerved to the right and he was confronted with the Cane vehicle stopped in the roadway, he applied his brakes as hard as he could, but he could not avoid hitting the Cane vehicle. Furthermore, Cody McClelland testified that it all happened quickly and people hit brakes and slammed into each other and that several vehicles left both sides of the roadway. Courtney Cavalier also testified that out of nowhere, a vehicle hit something and then it was "like a giant, live pinball machine" where cars were going everywhere.

Plaintiffs also presented witness testimony and testimony from the investigating officer which differed from the testimony offered by defendants. However, we find, from our *de novo* review of the record, that the jury was presented with conflicting testimony regarding the actions of the parties following the deer entering the roadway, and as noted by the trial court, the facts and issues were close. Furthermore, as previously noted, credibility determinations cannot be made in deciding a motion for directed verdict. Accordingly, we find that considering all evidentiary inferences in the light most favorable to the defendants, that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions regarding the affirmative defenses of *force majeure* and sudden emergency, and therefore, the trial court abused its discretion in granting plaintiffs' motion for directed verdict.

As such, due to the reversible errors of the trial court in failing to grant plaintiffs' motion for mistrial and in granting plaintiffs' motions for directed verdict,

10

we vacate the trial court's October 21, 2022 and December 19, 2022 judgments and remand this matter for further proceedings consistent with this opinion. See Baldwin v. Board of Supervisors for the University of Louisiana System, 08-2359 (La. App. 1st Cir. 6/30/09), 2009WL1879476 *14, writs denied, 09-1917 (La. 12/18/09), 23 So. 3d 947 and 09-1919 (La. 12/18/09), 23 So. 3d 948, cert denied, 560 U.S. 926, 130 S. Ct. 3330, 176 L. Ed. 2d 1222 (2010).

**Motion to File Materials for Judicial Notice**

On November 30, 2023, plaintiffs filed a Motion to File Materials for Judicial Notice of Legal Duty, which requested that, in considering the legal duties of the parties, this court take judicial notice of the Louisiana Class D & E Driver's Guide. This motion was referred to the merits of the appeal for consideration. Therefore, because we have found several procedural, reversible errors, which necessitate remand of this matter to the trial court, we deny the plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, we vacate the October 21, 2022 and December 19, 2022 judgments of the trial court and remand this matter for further proceedings consistent with this opinion. Additionally, we deny plaintiffs' motion to file materials for judicial notice. All costs of this appeal are assessed equally among the parties.

**JUDGMENTS VACATED AND REMANDED; MOTION TO FILE MATERIALS FOR JUDICIAL NOTICE DENIED.**