ROBERT A. CHAISSON, Judge.
12Monica and Garret Haab (the “Haabs”) appeal from a summary judgment dismissing with prejudice their suit against Jefferson Parish and several of its departments and employees. The Haabs allege in their suit that they suffered the loss of their personal property when, during Hurricane Gustav, the defendants did not promptly respond to a fire at the house where the Haabs were residing. For the following reasons, we affirm that judgment.
FACTS AND PROCEDURAL HISTORY
The underlying facts are not disputed. At the time that Hurricane Gustav struck southeast Louisiana on September 1, 2008, the Haabs were renting a house in Jefferson Parish. On August 27, 2008, in response to the approach of Hurricane Gustav, the State of Louisiana declared a state of emergency. Jefferson Parish likewise declared a state of emergency on August 30, 2008. The following day, a mandatory evacuation order was issued for residents of the east bank of Jefferson |sParish, and a 24-hour curfew was announced. Residents who failed to evacuate were informed not to expect government, law enforcement, fire or emergency medical services during that time.
During the morning hours of September 1, 2008, a falling tree branch struck the electrical service entering the Haabs’ residence and started a fire. The Haabs had evacuated as ordered, and thus were not at home at the time of the fire. Neighbors, including Sheriff Newell Normand and Constable Dan Civello, attempted to fight the fire with garden hoses. The fire was reported at about 8:50 a.m., but because the Parish’s Fire Service Disaster Response Plan (the “Plan”) was in effect, no fire units responded. The provision in the Plan pertinent here is that fire units would *1178 not respond when sustained wind speeds reached 50 mph, which they reportedly had done earlier that morning. Both Sheriff Normand and Constable Civello made additional calls to fire personnel urging them to respond.
At about 9:25 a.m., Deano Bonano, the Director of Jefferson Parish Homeland Security, and David Saunders, Director of the Jefferson Parish East Bank Consolidated Fire Department, arrived at the scene to assess the situation. Mr. Bonano believed that the winds had subsided to a point where they would not be a great threat, and ordered a fire unit to respond. The unit arrived at 9:43 a.m. and began fighting the fire, but the firefighters were ordered not to enter the house because high winds created a danger of structural collapse. The fire was extinguished by noon, but the house was nonetheless a total loss.
The Haabs sued the Parish of Jefferson and several of its departments, as well as a number of individual Jefferson Parish employees responsible for public safety, alleging that their personal property in the rental house was lost due to the factions of the defendants.[1] The Haabs seek to hold the various defendants liable for their conduct during two distinct time periods: first, for the conduct of the Parish officials from 2006 to 2008, in their actual formulation, adoption and review of the Plan, and second, for the conduct of the Parish employees in their activation of the Plan, and response to the fire during the actual emergency event of Hurricane Gustav. All of the defendants urged a motion for summary judgment, contending that, pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act (the “HSA”),[2] the Parish and its departments are entitled to absolute immunity and the individual employee defendants are entitled to qualified immunity, for acts taken during “emergency preparedness activities.” Additionally, the defendants claim that they are entitled to discretionary immunity, for events that took place before and during the actual event, pursuant to La. R.S. 9:2798.1, the discretionary immunity statute (the “DIS”). The trial court granted the defendants’ motion for summary judgment, and the Haabs now appeal that judgment.
LAW AND DISCUSSION
Summary judgments are reviewed de novo on appeal, that is, the appellate courts use the same criteria as the district courts in considering such motions. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827 (La.5/22/07), 958 So.2d 634. Our inquiry is whether there is any dispute as to material facts, and, if not, is the moving party entitled to judgment as a matter of law. Id.; La. C.C.P. art. 966(B)(2).
The HSA requires that all parishes prepare and maintain an all hazards emergency operations plan and keep it current. La. R.S. 29:729(B). The Act further provides that:
|fiNeither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents’ employees or representatives of any of them engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any *1179 injury to persons or damage to property as a result of such activity.
La. R.S. 29:735(A)(1).
“Emergency preparedness” is defined as “the mitigation of, preparation for, response to, and the recovery from emergencies or disasters.” La. R.S. 29:723(4). Inasmuch as the HSA provides absolute immunity to the political subdivision and its agencies during emergency preparedness activities, we find that the trial court was correct to grant summary judgment in favor of the Parish and its various departments regarding their conduct in activating the Plan, and in their response to the fire during the actual emergency event. The Parish, however, contends that the HSA also provides the Parish, and its various departments, absolute immunity in connection with the formulation, adoption and review of the Plan itself. We disagree.
In Banks v. Parish of Jefferson, 08-27 (La.App. 5 Cir. 6/19/08), 990 So.2d 26, writ denied, 08-1625 (La.10/24/08), 992 So.2d 1043, this Court, interpreting the HSA, found that absolute immunity in emergency preparedness applies only when the activities complained of are undertaken to address a discreet or specific condition or event. Banks, at 34. In Banks, this Court declined to extend absolute immunity as defined in the HSA to general levee construction activities not performed in preparation for a specific emergency event. We agree that there is a temporal element implicit to the grant of absolute immunity in the HSA, and that it therefore applies only to the complained of conduct during the actual occurrence of the emergency event, not to the formulation, adoption and review of a Plan [ (¡enacted some two years prior to the emergency event.[3] Therefore, the Parish and its departments’ entitlement to immunity regarding the formulation, adoption and review of the Plan must be analyzed pursuant to the DIS.
Unlike the absolute immunity provided to the Parish and its departments by the HSA, the HSA provides only qualified immunity to individual Parish employees during a specific emergency event, as no immunity is afforded for acts that may constitute “willful misconduct.” Similarly, the DIS, La. R.S. 9:2798.1(0(2) which is applicable at all times, provides only qualified immunity to public entities and their officials and employees for policymaking and discretionary acts.[4] No immunity is afforded under the DIS for “acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.”
Therefore, the question before the trial court on defendants’ motion for summary judgment, and now before us, is whether the acts or omissions of the Parish officials or employees, either in the formulation, adoption, review or execution of the Plan itself, constituted “willful misconduct” under the HSA or “criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct” under the DIS. In order for the *1180 Haabs to defeat the defendants’ claims of discretionary immunity, it was incumbent upon them to put forth evidence showing that the conduct of the defendants rose to the level of misconduct required by the HSA or the DIS. For the following reasons, we find that none of the conduct of the Parish officials or employees constituted either 17“willful misconduct” or “criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct.”
In this case, the evidence of record indicates that Mr. Bonano was appointed Homeland Security Chief of Jefferson Parish in 2006. In that capacity, and as authorized by the HSA, he helped to develop, with input from the various Parish firefighting services, a Plan for how those services were to respond in the event of an emergency. Under the Plan, once sustained wind speeds in a hurricane reached 50 mph, firefighters were to remain in place and not respond because it had been determined that the dangers to firefighters in such conditions were greater than the good they could do in fighting fires. The evidence further showed that the Parish had in operation a Supervisory Control and Data Acquisition System (SCADA), consisting of a number of sensors located all over the Parish. Several of these sensors measured wind speeds, and their measurements were transmitted to the Emergency Operation Center (EOC), which in turn was to notify all appropriate units, including firefighters, when the 50 mph threshold had been met. At the time of Hurricane Gustav, Kenneth Padgett was the Emergency Management Director for the Parish, and as such oversaw the EOC. On September 1, 2008, Jason Phillips was collecting the wind speed information from the SCADA, and, at about 5:30 a.m., he detected wind speeds of over 50 mph. Mr. Padgett therefore notified all agencies to implement their emergency plans for this contingency. For firefighters, the Plan called for them to shelter in place and not respond to fires, and this is what Mr. Saunders ordered.
The evidence also indicated that Mr. Bonano had the authority to override the plan, and that he eventually did so. Upon receiving information about the fire, he drove to the scene, and after conferring with Mr. Saunders about the safety issues, he decided that a fire unit should be dispatched to the scene. However, [ ^because of the strong winds, firefighters were restricted to fighting the fire from the outside of the house due to the threat of collapse.
One of the documents introduced by the Haabs in an attempt to establish that a genuine issue of material fact exists as to whether the defendants engaged in “willful misconduct” or “criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct” is the affidavit of Constable Civello. Constable Civello’s affidavit is based not only upon his personal observations on the day of the fire, but also upon his expertise in fire safety, having formerly been a fire department chief himself. Constable Civello, in addition to finding a number of deficiencies in the Plan itself, and in the activation of the Plan and actual response to the fire, opined that 1) the “decision to use this plan was criminal, willful, outrageous, reckless, and flagrant misconduct,” and 2) the failure of Mr. Saunders and Mr. Bona-no to order a fire unit to respond to the fire when they knew it was safe to do so was “willful misconduct.”
The Haabs argue that the question of whether this Plan rose to the level of “willful misconduct” or “criminal, willful, outrageous, reckless, and flagrant misconduct” is a question of fact. They complain that the only way that the trial court could have granted summary judgment in consideration of Constable Civello’s affidavit *1181 was for the trial court to disregard his conclusions entirely. They cite Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, for the proposition that automatically excluding expert opinion evidence at the summary judgment stage is not allowed.
In Independent Fire, the court was faced with competing expert affidavits regarding which of two propane tanks was the source of a grill fíre. The Supreme Court found that although the evidence submitted on behalf of one of the parties by way of expert opinion was circumstantial and conflicted with the eyewitness | testimony, the Court could not conclude that “... ‘the scintilla of evidence presented supporting [this expert’s] position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true,’ such that a trial court should grant summary judgment.” Id. at 236-37. (Citation omitted). The Court therefore held that “[i]f a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert’s opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial.” Id. at 236. (Emphasis added). Clearly, the issue in dispute in Independent Fire, (i.e., the source of the fire), was a factual question. Because we disagree with the Haabs’ assertion that the question of “[w]hether the foolishness of this Plan rose to the level of criminal, willful, outrageous, reckless, and flagrant misconduct” is a question of fact, we do not find the decision in Independent Fire pertinent to our analysis in the case before us.
 Whether a given set of conduct rises to the level of “willful misconduct” or “criminal, willful, outrageous, reckless, or flagrant misconduct” is a standard created by law to determine whether liability will result from that conduct; as such, the question of whether a given set of conduct rises to the level of “willful, misconduct” or “criminal, willful, outrageous, reckless, or flagrant misconduct” is purely a question of law, and is within the province of the trial court to determine at the summary judgment stage. The fact that Constable Civello, in addition to expressing his opinion regarding the underlying facts and conduct in this matter, also expresses his opinion on the purely legal question of whether that conduct rises to the level of “willful misconduct” or “criminal, willful, outrageous, reckless, or flagrant misconduct” does not create a question of material fact that precludes l10the grant of summary judgment in this matter. Therefore, while Constable Civello’s opinion regarding the underlying facts and conduct is relevant to determine whether a genuine issue of material fact exists, his opinion regarding the legal question of the characterization of that conduct is not.
In Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907, 916 (La.App. 3rd Cir.1975), aff'd, 328 So.2d 367 (La.1976), the Third Circuit stated:
The terms ‘willful’, ‘wanton’, and ‘reckless’ have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do (sic) the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it *1182 highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow. (Citations omitted).
We conclude that only the most egregious conduct by parish agents, employees or representatives that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of “willful misconduct” or “criminal, willful, outrageous, reckless, or flagrant misconduct” resulting in a forfeiture of all the immunity protections afforded by the HSA and the DIS.
After a thorough review of the evidence of record on the summary judgment motion, and accepting as true, deficiencies in the Plan itself and in the response to the actual fire as opined by Constable Civello, we do not find any facts that are even remotely suggestive of the extreme conduct required by the statutes on the part of any of the Parish officials or employees in the formulation, adoption or review of the Plan, or in the activation of the Plan and response to the fire during Hurricane Gustav. The evidence shows that the Parish was complying with the J^HSA in adopting the Plan. It also shows that the Parish had a rational basis for including provisions in the Plan that balanced the needs of the public for fire protection during an emergency event with the need for the safety of its employees during that event. Furthermore, the evidence shows that the employee defendants, who were required to make instantaneous decisions during a crisis situation, were doing their best to comply with the mandates of the Plan, and still be responsive to the needs of the public. Although in hindsight there may have been deficiencies in the Plan itself, and in the response to the fire, as opined by Constable Civello, we conclude that these deficiencies, at most, might constitute ordinary negligence for which the Parish and its employees are immune under both the HSA and the DIS on the facts as presented in this case. As such, we find that the Parish and its departments, officials and employees are entitled to absolute and qualified immunity pursuant to the HAS, and qualified immunity pursuant to the DIS. Finding there are no genuine issues of material fact, and that the defendants are entitled to judgment as a matter of law, we conclude that the summary judgment as to all defendants was properly granted. La. C.C.P. art. 966(C).
DECREE
For the foregoing reasons, the summary judgment granted in favor of the defendants and dismissing the Haabs’ lawsuit with prejudice is hereby affirmed.

AFFIRMED.

JOHNSON, J., dissents with reasons.

. The owners of the house are not parties here.

. La. R.S. 29:721, et seq.

. This Court, in a writ disposition, reached the same conclusion regarding the applicability of "emergency preparedness immunity” to the formulation of the Jefferson Parish “doomsday plan” adopted seven years prior to the flooding that occurred in Hurricane Katrina. See Chicago Property Interests, L.L.C. v. Broussard, 08-1210 (La.App. 5 Cir. 3/6/09), writ denied, 09-758 (La.5/22/09), 9 So.3d 150(unpublished writ).

. La. R.S. 9:2798.1(B) provides: “Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.”