BRIAN MARIANA AND ZACHARY MARIANA

VERSUS

MAGNOLIA AUTO TRANSPORT, LLC,
HALLMARK SPECIALTY INSURANCE
COMPANY, NICKOLUS TREADWAY, USAA
CASUALTY INSURANCE COMPANY,
DEPUTY TROY CASSIOPPI, ST. JOHN THE
BAPTIST PARISH SHERIFF'S OFFICE, ABC
COMPANY, DEF INSURANCE COMPANY
AND GHI INSURANCE COMPANY

NO. 21-CA-447

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 72,156, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

May 26, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED**
  **JGG**
  **FHW**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
BRIAN MARIANA AND ZACHARY MARIANA
Leo J. Palazzo
Jason J. Markey
Mario A. Arteaga, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
LIEUTENANT TROY CASSIOPPI, MIKE TREGRE, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF ST. JOHN THE BAPTIST PARISH AND
AMERICAN ALTERNATIVE INSURANCE CORPORATION
Carl A. Butler
Tiffany M. Fleming
Kristin M. Barone

**GRAVOIS, J.**

Plaintiffs, Brian Mariana and Zachary Mariana, appeal the trial court's October 26, 2020 judgment (as amended on January 25, 2022) which granted the motion for summary judgment filed by defendants, Lt. Troy Cassioppi of the St. John the Baptist Parish Sheriff's Office, and Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish, and their liability insurer, American Alternative Insurance Corporation, finding that they were entitled to discretionary immunity under La. R.S. 9:2798.1, and dismissing them from this suit with prejudice.  For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

This case concerns a motor vehicle accident which occurred on Interstate 10 ("I-10") in St. John the Baptist Parish on May 2, 2017.  Plaintiff Zachary Mariana, an LSU student, was returning home to Belle Chasse, Louisiana, when Lt. Troy Cassioppi of the St. John the Baptist Parish Sheriff's Office (sometimes hereinafter referred to as the "SJSO") clocked him for speeding as he was coming off the elevated portion of I-10 near the Belle Terre Boulevard exit.  When Lt. Cassioppi signaled Mr. Mariana to pull over to the shoulder, Mr. Mariana instead slowed down while still in the left lane of travel and was rear-ended by a tractor-trailer rig being driven by defendant Nickolus Treadaway.[1]  Mr. Treadaway's tractor-trailer rig was owned by Magnolia Auto Transport, LLC.  Lt. Cassioppi cited Mr. Mariana for speeding.

On April 30, 2018, plaintiffs filed a Petition for Damages against defendants Treadaway, Magnolia, and Hallmark Specialty Insurance Company, Magnolia's liability insurer.[2]  Plaintiffs also named Lt. Cassioppi, the St. John the Baptist

---

[1] Mr. Treadaway is alternately referred to as "Treadway" in the caption and in some pleadings.  However, his own pleadings refer to him as "Treadaway" and he appears as "Treadaway" in the appellate briefs.  Accordingly, this opinion will use "Treadaway."

[2] In their petition, plaintiffs alleged that the 2008 Kia Sorrento Mr. Mariana was operating at the time of the accident was owned by his father and co-petitioner, Brian Mariana.

21-CA-447                                        1

Parish Sheriff's Office, and their insurer (identified simply as "GHI Insurance Company"), as defendants in the Petition for Damages.[3] In their First Amending and Supplemental Petition for Damages, plaintiffs added Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish (who was incorrectly identified in the original Petition for Damages as "St. John the Baptist Parish Sheriff's Office") as a defendant.[4] Originally sued as "GHI Insurance Company" in the original Petition for Damages and the First Amending and Supplemental Petition for Damages, American Alternative Insurance Corporation was added as the insurer of Lt. Cassioppi and Sheriff Tregre in plaintiffs' Second Amending and Supplemental Petition for Damages filed on June 27, 2019.

On July 28, 2020, Lt. Cassioppi, Sheriff Tregre, and American Alternative Insurance Corporation ("defendants") filed a motion for summary judgment, seeking dismissal from this suit with prejudice, for "policymaking or discretionary acts or omissions of public entities or their officers or employees," as provided for

---

Plaintiffs also sued USAA Casualty Company, their underinsured motorist carrier. Plaintiffs dismissed USAA without prejudice on July 10, 2018. USAA is not part of this appeal.

[3] In their Petition for Damages, plaintiffs alleged that said accident, injuries, and damages were caused solely and entirely, or in the alternative, in part, by the negligence and/or fault of Lt. Cassioppi in the following acts of commission and omission:

    a)  Improperly attempting to pull over Zachary Mariana's vehicle;

    b)  Not maintaining a proper lookout;

    c)  In failing to use reasonable vigilance and prudent care under the circumstances; and

    d)  Any and all other acts of negligence and/or fault, be they gross, willful, or wanton, to be shown at the time of trial, all in violation of the laws and ordinances of this state and parish including, but not limited to La. C.C. arts. 2315, 2315.4 and 2316, as if copied *in extenso*.

[4] In their First Amending and Supplemental Petition for Damages, plaintiffs alleged that said accident, injuries, and damages were caused solely and entirely, or in the alternative, in part, by the negligence and/or fault of Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish, in the following acts of commission and omission:

    a)  Failing to properly train, monitor and supervise his employees; and

    b)  Any and all other acts of negligence and/or fault, be they gross, willful or wanton, to be shown at the time of trial.

The petition also alleged that Lt. Cassioppi was in the course and scope of his employment with Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish, at the time of the subject accident, and that by virtue of said employment relationship, Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish, is liable for the acts of its employee under the theory of *respondeat superior*, in accordance with La. C.C. art. 2320.

in La. R.S. 9:2798.1. In their motion, defendants also argued that Lt. Cassioppi's actions were not negligent under the traditional "duty/risk" analysis. Plaintiffs filed an opposition to the motion for summary judgment and a response to defendants' statement of uncontested facts. Defendants filed a reply to plaintiffs' opposition.

The matter came on for a hearing on October 8, 2020. At the conclusion of the hearing, the trial court ruled from the bench, granting defendants' motion for summary judgment on both grounds (finding that statutory immunity applied to defendants, and finding no negligence by defendants) and expressing his intent that defendants be dismissed with prejudice from the suit. A written judgment with reasons was issued on October 26, 2020. Plaintiffs timely filed a motion for a suspensive appeal of the judgment, which was granted.

Upon lodging of the appellate record, this Court determined that the October 26, 2020 judgment lacked the necessary decretal language to invoke this Court's appellate jurisdiction. Specifically, the judgment granted defendants' motion for summary judgment, but otherwise did not decree the specific relief that was granted, *i.e.*, dismissal of defendants. This Court, under our supervisory jurisdiction, remanded the matter to the district court on January 19, 2022 with an order to amend the judgment to include the necessary decretal language, and for the Clerk of Court of St. John the Baptist Parish to supplement the appellate record with the amended judgment. This Court also ordered the trial court to set forth its written reasons for the judgment in an opinion separate from the judgment, as per La. C.C.P. art. 1918(B). The judgment was duly amended on January 25, 2022 to dismiss defendants with prejudice. Separate written reasons for judgment were issued and the record was duly supplemented to this Court on February 1, 2022.

On appeal, plaintiffs argue five assignments of error, which we discuss below.

**FACTS**

As gleaned from the motion for summary judgment, the opposition thereto, and the attachments to the motion and the opposition that were admitted into evidence, the following sequence of events occurred. On May 2, 2017, Lt. Cassioppi of the St. John the Baptist Parish Sheriff's Office was conducting speed enforcement on I-10 eastbound in St. John the Baptist Parish around mile marker 206 (near the "Belle Terre Boulevard" exit), which is located on land just past the end of the "three mile bridge." Lt. Cassioppi was positioned on the right shoulder of I-10 facing east. Zachary Mariana was driving eastbound on I-10 at that location on his way home to Belle Chasse from LSU, operating a Kia Sorrento SUV in the left lane of travel. Lt. Cassioppi's radar recorded Mr. Mariana's speed at 84 miles per hour, which exceeded the legal speed limit of 70 miles per hour at that location. Lt. Cassioppi activated the lights on his police unit and also put his hand out of the window, allegedly first motioning with his hand outspread, palm facing forward, and then pointing over the top of his unit to the right shoulder, to signal Mr. Mariana to pull over. At the same time, Lt. Cassioppi proceeded forward at a slow speed. It is disputed as to whether Lt. Cassioppi moved solely on the shoulder of I-10 from where he had been positioned, which he claimed, or whether he also began moving into the right lane of travel on I-10, as Mr. Mariana and Mr. Treadaway testified in deposition.[5] It is undisputed, however, that at all pertinent times, Mr. Mariana and Mr. Treadaway behind him were traveling in the

---

[5] Mr. Treadaway's deposition testimony, however, was equivocal. When directly asked several times, he could not remember whether Lt. Cassioppi moved from the shoulder to the right lane, and at other places in the deposition he testified that he believed the officer did not move into the right lane. Mr. Treadaway's written statement, attached to the motion for summary judgment, stated that the police officer (Lt. Cassioppi) was signaling the motorist in front of him (Mr. Mariana) to pull over, whereupon Mr. Mariana first slowed, then "stopped" in front of Mr. Treadaway, who applied his brakes as hard as he could but skidded into the Kia SUV and then jackknifed.

left lane of travel of I-10. No other vehicles were in the right lane of travel except for possibly Lt. Cassioppi's vehicle after he activated his lights and pulled forward.

Mr. Mariana testified in his deposition that as he approached, he saw Lt. Cassioppi activate his lights and put his hand out and point to the shoulder. He testified that Lt. Cassioppi's hand motion confused him, as he was uncertain at first if Lt. Cassioppi was pulling him over or another motorist who was in front of him. Mr. Mariana braked hard, reducing his speed while staying in the left lane of travel. It is disputed how much Mr. Mariana slowed: Mr. Treadaway, driving the Magnolia Transport 18-wheeler rig that struck Mr. Mariana, stated in his deposition that Mr. Mariana slowed suddenly and "slammed on his brakes" and reduced his speed to almost a stop in the left lane; Mr. Mariana, however, stated that he braked but was still traveling around 40-50 miles per hour at his slowest. Mr. Treadaway, traveling in the left lane behind Mr. Mariana, was unable to stop his rig from hitting Mr. Mariana's vehicle. After contact was made, Mr. Treadaway's rig jack-knifed and came to rest partially in the median of I-10. Mr. Mariana also pulled over, on the left side, in the median. Lt. Cassioppi cited Mr. Mariana for speeding; Trooper Jared Taylor of the Louisiana State Police, who also responded to the accident, cited Mr. Mariana for impeding the flow of traffic.

## STANDARD OF REVIEW

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Sarasino v. State Through Dep't of Pub. Safety & Corr.*, 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 927-28. When the mover will bear the burden of proof at trial, the mover has the burden of showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Only when the mover

makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. *Action Oilfield Services, Inc. v. Energy Management Company*, 18-1146 (La. App. 1 Cir. 4/17/19), 276 So.3d 538, 542. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

On appeal, our review of summary judgments is *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A *de novo* review or an appeal *de novo* is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. *Wooley v. Lucksinger*, 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 353. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Young v. Hard Rock Constr., L.L.C.*, 19-484 (La. App. 5 Cir. 3/17/20), 292 So.3d 178, 184, *writ denied*, 20-0544 (La. 9/23/20), 301 So.3d 1190.

## FIRST AND FOURTH ASSIGNMENTS OF ERROR

### *Indispensable Party; Comparative Fault Apportionment*

In their first assignment of error, plaintiffs argue that Lt. Cassioppi and Sheriff Tregre are indispensable parties because Lt. Cassioppi's actions "contributed" to the crash, according to Trooper Taylor's deposition, and they should share comparative fault with the other parties at fault, regardless of whether statutory immunity applies. In their related fourth assignment of error, plaintiffs argue that even if immune from liability under La. R.S. 9:2798.1, Lt. Cassioppi and Sheriff Tregre are not entitled to be dismissed from the suit because a portion of fault for the accident must be attributed to them.

Concerning whether Lt. Cassioppi and Sheriff Tregre are "indispensable" parties in the matter, whether a party's actions may have "contributed" to the injury is not relevant to the definition of an "indispensable" party. La. C.C.P. art. 641 defines the term in the context of "joinder." The current situation does not fit the Code of Civil Procedure's statutory scheme for joinder, which is operative when a party or parties, without whose presence in the suit "complete relief cannot be accorded among those already parties," has not been joined in the suit. In the instant case, we have the <u>dismissal</u> of parties, who were originally joined in the suit, <u>after</u> they were determined to be statutorily immune and thus without liability.

The statutory immunity provided by La. R.S. 9:2798.1 exempts public entities from liability for their employees' discretionary or policymaking acts; if the immunity applies under the facts of the case, the public entity is immune from liability. *Sarasino v. State Through Dep't of Pub. Safety & Corr.*, 215 So.3d at 928. Accordingly, plaintiffs' argument that Lt. Cassioppi and Sheriff Tregre should be apportioned a share of fault, even if found statutorily immune, is without merit.

Likewise, there is no merit to plaintiffs' position that even if immune from suit, Lt. Cassioppi and Sheriff Tregre should not be dismissed from the suit. Notably, plaintiffs provide no legal support for this position. If Lt. Cassioppi and Sheriff Tregre are immune from suit and therefore cannot not be apportioned a percentage of fault, then dismissal is required and was proper.

These assignments of error are without merit.

## SECOND ASSIGNMENT OF ERROR

### *Discretionary Immunity*

In their second assignment of error, plaintiffs argue that Lt. Cassioppi and Sheriff Tregre are not entitled to the discretionary immunity of La. R.S. 9:2798.1, as Lt. Cassioppi's actions did not constitute a discretionary decision grounded in

public policy, nor was his conduct in good faith to limit risk to the public. They also argue that the Sheriff is not entitled to this qualified immunity because the SJSO failed to properly train, monitor, or supervise Lt. Cassioppi.

The substantive law applicable to this case, La. R.S. 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," provides:

> A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

> C. The provisions of Subsection B of this Section are not applicable:

> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or

> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

> D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

The Louisiana Supreme Court has held that La. R.S. 9:2798.1 is "clear and unambiguous" and applies to "policymaking or discretionary acts when such acts are within the course and scope of ... lawful powers and duties." *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138 (La. 5/20/03), 851 So.2d 959, 967.

As this case involves the interpretation of a statute, the starting point is the framework of statutory analysis as set forth by our Supreme Court. The *Gregor* court outlined the principles of statutory analysis as follows:

The starting point for the *interpretation* of any statute is the language of the law itself. *Ginn v. Woman's Hospital Foundation, Inc.*, 02-1913, p. 9 (La. 4/9/03), 842 So.2d 338, 344; *Rougeau v. Hyundai Motor America*, 01-1182, p. 5 (La. 1/15/02), 805 So.2d 147, 151. Special rules for interpreting a statute (such as La. R.S. 9:2798.1) have been enacted by the legislative branch and are found in La. R.S. 1:1 *et seq.* Louisiana Revised Statute 1:3 provides, in pertinent part, that "[w]ords and phrases *shall* be read with their context and *shall* be construed according to the common and approved usage of the language" and the "word '*shall*' is mandatory." (Emphasis added.) Louisiana Revised Statute 1:4 provided that "[w]hen the wording of a Section [of a statute] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." The legislative branch also has provided general rules for interpreting laws in La. C.C. art. 9 *et seq. See*, in particular, La. C.C. arts. 9 and 11. We are bound by the language of a relevant law. *Allen v. State, through the Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, p. 12 (La. 4/9/03), 842 So.2d 373, 381.

The Louisiana Constitution of 1974 art. III, § 15(A) provides, in pertinent part, that "[e]very bill shall contain a brief title indicative of its *object*." (Emphasis added.) Thus, the title of a law may be examined to determine its purpose. *Boutte v. Jefferson Parish Hosp. Sev. Dist.* No. 1, 99-2402, p. 5 (La. 4/11/00), 759 So.2d 45, 49. The title of La. R.S. 9:2798.1 is "Policymaking or discretionary acts or omissions of public entities or their officers or employees." After reviewing the title and substance of La. R.S. 9:2798.1, we must conclude that for purposes of this case its *object* is to provide immunity from liability for offenses and quasi offenses of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions.[6]

Dictionaries are a valuable source for determining the "common and approved usage" of words. *Louisiana Horsemen's Benevolent and Protective Assoc.1993, Inc. v. Fair Grounds Corp.*, 02-1928, p. 5 (La. 4/9/03), 845 So.2d 1039, 1042.

*Gregor*, 851 So.2d at 964. (Emphasis in original.) (Internal footnotes omitted.) (Footnote added.)

The *Gregor* court concluded that "policymaking" in the public sector means "the *planning of a course of action* for the social or political well-being of the state," and that "discretionary" means that the state actor had a "power of free decision or latitude of choice within certain legal bounds." *Id.* at 965. (Emphasis in original.)

---

[6] La. R.S. 9:2798.1 was enacted by Acts 1985, No. 453, §1. It was amended in 1987 to fix two spelling errors but was otherwise unchanged from the original text. Next, it was reenacted in 1995 by Acts 1995, No. 828, as part of a package of statutory amendments concerning various tort immunities, but the text was unchanged from the 1987 version.

Accordingly, we now consider the evidence presented in light of the wording of the statute.[7]

Based upon the evidence attached to defendants' motion for summary judgment, it is undisputed that the SJSO is a "public entity," that Sheriff Tregre is an elected official and head of the SJSO, and that Lt. Cassioppi is an employee of the SJSO. Lt. Cassioppi testified in his deposition that he had been employed by the Sheriff's Office since 1990, and was trained to conduct traffic stops at the police academy and through extensive additional field training. In 1996, he was assigned to the traffic division, where he remained for over 20 years, ascending to the rank of Lieutenant and Traffic Division Commander. It is thus also clear that at the time of the accident, Lt. Cassioppi was acting "within the course and scope of [his] lawful powers and duties" with the SJSO.

Paragraph (C)(1) of La. R.S. 9:2798.1 states that the immunity does not apply "[t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists[.]"

Captain Charles Wale's affidavit which was attached to defendants' motion for summary judgment identified that the "legitimate governmental objective" advanced by his department's policy of allowing speed enforcement officers

---

[7] The Sheriff supported his motion for summary judgment with the following exhibits, which were admitted: defendants' statement of uncontested material facts; excerpts from the November 19, 2019 deposition of Lt. Troy Cassioppi (including photos illustrating his method); the affidavit of Captain Charles Wale, Commander of the Training Division of the SJSO and exhibits attached thereto (excerpt from LSP enforcement manual, SJSO's request for documents from the Louisiana State Police, and SOP-10 from the SJSO Standards of Operations manual); responses of defendant Treadaway to requests for admission; excerpts from May 21, 2020 deposition of Mr. Treadaway; excerpts from the November 25, 2019 deposition of plaintiff Zachary Mariana; and excerpts from the November 20, 2019 deposition of State Trooper Jared Taylor.

Plaintiffs supported their opposition to the motion for summary judgment with the following exhibits, which were admitted: plaintiffs' responses to defendants' statements of uncontested material facts; excerpts from the November 25, 2019 deposition of Zachary Mariana; excerpts from the May 21, 2020 deposition of Mr. Treadaway; and excerpts from the November 20, 2019 deposition of La. State Trooper Jared Taylor.

discretion on their methods was, overall, highway safety, and the avoidance of dangerous high speed chases. He attested that he has been employed with the Sheriff's Office since 1999 and has been the commander of the Training Division since 2012. By virtue of that position, Captain Wale attested that he was very familiar with the SJSO's policies and procedures, as well as the training officers receive. He was a policy maker for the SJSO regarding the required training for officers participating in speed enforcement. Importantly, he attested that a SJSO officer conducting speed enforcement has the discretion to determine, in accordance with his training and experience and subject to statutory restrictions, how to notify a speeding motorist of their violation with the goal of pulling them over effectively and safely, and that there was no particular prescribed method that an officer must use. He attested that the method used by Lt. Cassioppi to pull over Mr. Mariana was a common practice of the SJSO officers conducting speed enforcement. He also attested that the SJSO has not adopted or otherwise implemented into its procedures any Louisiana State Police policies or procedures relating to speed enforcement or traffic stops. He stated that the SJSO has no policy or procedure, as does the Louisiana State Police, which regulates, limits, or prohibits an officer from using gestures, signals, or other forms of non-verbal communication while conducting speed enforcement, as long as the officer is acting reasonably under the circumstances.

Captain Wale identified the SJSO Standard Operating Procedure SOP-10, Section III, which was in effect on the day of the accident.[8] He stated that this policy did not prohibit the method that Lt. Cassioppi used on the day of the accident to pull Mr. Mariana over, nor did any policy require that he use a particular method. Captain Wale attested that it is "reasonable and consistent with

---

[8] This policy was attached to Captain Wale's affidavit.

SJSO training for an officer to notify potential violators from the shoulder of a highway by utilizing the overhead signal lights and hand gestures before resorting to a high-speed pursuit."

Upon *de novo* review, we find that no genuine issue of material fact remains as to whether the requirements of La. R.S. 9:2798.1(A), (B), and (C)(1) have been met. It is clear from the evidence presented that the SJSO's policies as described by Captain Wale and Lt. Cassioppi were in furtherance of the legitimate governmental objective of highway safety and avoidance of high-speed chases. Plaintiffs failed to present any evidence to rebut the SJSO's evidence and position in this regard, nor did plaintiffs present any evidence to show that Lt. Cassioppi, in using the particular method he used to pull Mr. Mariana over, was acting outside of the discretion allowed him by his department's policies, or that his actions were not reasonably related to highway safety, or that he was acting unreasonably under the circumstances. This assignment of error is without merit.

### THIRD ASSIGNMENT OF ERROR

#### *Recklessness or Gross Negligence*

In their related third assignment of error, appellants argue that Lt. Cassioppi is not entitled to the immunity of La. R.S. 9:2798.1 because he acted in reckless disregard for the safety of others, which contributed to the accident, injury, and damages. For review of this assignment, we turn to paragraph (C)(2) of La. R.S. 9:2798.1, which states that the immunity does not apply to "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."

Plaintiffs' evidence in opposition to the motion for summary judgment does not show any conduct on the part of Lt. Cassioppi or the SJSO that was in anyway criminal, fraudulent, malicious, or intentional. Plaintiffs have thus focused on alleged "reckless" or "gross" negligence of Lt. Cassioppi.

The list in paragraph (C)(2) of La. R.S. 9:2798.1—acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct—connotes conduct more severe than negligent behavior. Recklessness is, in effect, "gross negligence."

In *Todd v. State Through Dep't of Soc. Servs., Off. of Cmty. Servs.*, 96-3090 (La. 9/9/97), 699 So.2d 35, 40, quoting *Ambrose v. New Orleans Police Amb. Serv.*, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216, 219-220, the Supreme Court stated:

> Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (La. 1942). Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F.Supp. 198 (E.D.La. 1953) (applying Louisiana law). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, et al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed.1984); 65 C.J.S. Negligence, § 8(4)(a), at 539-40 (1966 & Supp. 1993). "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." *Falkowski v. Maurus*, 637 So.2d 522 (La. App. 1 Cir. 1993).

Only the most egregious conduct by parish agents, employees, or representatives that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of "willful misconduct" or "criminal, willful, outrageous, reckless, or flagrant misconduct" resulting in a forfeiture of all the immunity protections afforded by the discretionary immunity statute. *Haab v. E. Bank Consol. Special Serv. Fire Prot. Dist. of Jefferson Par.*, 13-954 (La. App. 5 Cir. 5/28/14), 139 So.3d 1174, 1182, *writ denied*, 14-1581 (La. 10/24/14), 151 So.3d 609.

In order for plaintiffs to defeat defendants' claims of discretionary immunity, it was incumbent upon them to put forth evidence showing that the

conduct of defendants rose to the level of misconduct required by La. R.S. 9:2798.1(C)(2). *See Haab*, 139 So.3d at 1179-80; *Marshall v. Sandifer*, 17-1246, (La. App. 1 Cir. 9/21/18), 2018 WL 4520245, p. 10. We find that plaintiffs did not meet their burden in this regard.

Defendants pointed out in their summary judgment evidence (depositions of Lt. Cassioppi and Trooper Taylor) that Lt. Cassioppi had used this particular method of speed enforcement or traffic stops many times before without any adverse consequences. While Trooper Taylor's deposition testimony criticized Lt. Cassioppi's actions on the day of the accident, he also testified that he had seen Lt. Cassioppi use this particular method in the past without mishap.[9] He also failed to identify any particular fact or circumstance at Lt. Cassioppi's disposal during this encounter which would have indicated to him that this method of speed enforcement or traffic stops was improper or likely to result in an accident. Trooper Taylor testified that inherent in every traffic stop is the fact that officers never know how motorists are going to react to being pulled over, even considering the different methods of doing so. We find that Trooper Taylor's deposition testimony does not establish that Lt. Cassioppi's conduct rose to the level of recklessness or gross negligence. Further, the same evidence fails to show that Lt. Cassioppi acted unreasonably under the circumstances, when according to his extensive training and experience, he used a method that he had used successfully, without mishap, many times before.

While plaintiffs have asserted that it is an outstanding genuine issue of material fact as to whether Lt. Cassioppi pulled out into the right lane, rather than stayed on the right shoulder, as he claims, we find that it is not. The inquiry before

---

[9] In his deposition, Trooper Taylor testified he would not have used the method that Lt. Cassioppi used. He also testified that State Troopers are prohibited from using hand gestures to pull motorists over. He agreed, however, that Lt. Cassioppi had discretion over which method to employ. The policies that Trooper Taylor described applying to State Troopers do not apply to the SJSO speed enforcement force, as per Captain Wale's affidavit.

this Court in this assignment is whether Lt. Cassioppi was grossly negligent. Whether he remained on the shoulder, or whether he pulled out into the right lane—where neither plaintiff nor Mr. Treadaway was located and where no other motorists were present—neither scenario connotes gross negligence.[10]

In summary, the evidence provided in both the motion for summary judgment and plaintiffs' opposition thereto fails to support a finding or conclusion that Lt. Cassioppi acted grossly negligent or with recklessness in using a method of speed enforcement or traffic stops that he had successfully used many times in the past without injury or mishap. Further, there are no additional facts in evidence independently suggesting that Lt. Cassioppi, in his experience, should not have used this method. As the trial court stated in its reasons for judgment:

> Lastly, it goes without saying, Lt. Cassioppi's actions did not rise to criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Lt. Cassioppi simply pulled someone over with his lights and sirens and by gesturing his hand, which he has the authority and discretion to do.

Finally, where a public entity exercises its policymaking or discretionary duties, immunity applies in the absence of gross negligence. *See Anderson v. Anderson*, 07-805 (La. App. 5 Cir. 2/06/08), 980 So.2d 15, 18, *writ denied*, 08-0558 (La. 5/02/08), 979 So.2d 1285. Accordingly, our confirmation of the applicability of La. R.S. 9:2798.1's discretionary immunity herein pretermits an ordinary negligence analysis.

This assignment of error is without merit.

In light of the above, considering the particular facts and circumstances present in this case, we find that there is no genuine issue as to material fact and that defendants are entitled to judgment as a matter of law as to the applicability of

---

[10] In brief, plaintiffs argued that La. R.S. 32:24, entitled "Emergency Vehicles; Exceptions," is applicable. However, we find that it is not. At issue was whether Lt. Cassioppi's method was appropriate. His use of the police unit, as described in the evidence, was not within the ambit of La. R.S. 32:24.

discretionary immunity under La. R.S. 9:2798.1 herein. La. C.C.P. art. 966(A)(3); *Sarasino*, *supra*. Accordingly, the trial court did not err in granting defendant's motion for summary judgment on this issue and dismissing defendants from this suit with prejudice.

## FIFTH ASSIGNMENT OF ERROR

### *Trial court's "finding of fact"*

Lastly, plaintiffs argue that genuine issues of material fact remain regarding the trial court's "finding of fact," as stated in its reasons for judgment, that Mr. Mariana "slammed on the brakes suddenly," which caused a collision with Mr. Treadaway's vehicle, which they argue is not supported by the facts and the evidence.

The summary judgment ruled only on the issues raised in defendants' motion for summary judgment, which was whether Lt. Cassioppi and Sheriff Tregre were entitled to the statutory immunity of La. R.S. 9:2798.1. The statement made in the reasons for judgment regarding Mr. Mariana's actions, at this juncture, is *dicta*. It is not a material fact affecting the analysis of the issues raised in the summary judgment motion, nor is it a conclusively adjudged fact merely by mention in the appealed summary judgment, as Mr. Mariana's actions or fault were not placed at issue in the motion for summary judgment.

Appeals are taken from the judgment, not the reasons for judgment; the written reasons for judgment are merely an explication of the trial court's determinations, and do not alter, amend, or affect the final judgment being appealed. *Perniciaro v. Hamed*, 20-62 (La. App. 5 Cir. 12/16/20), 309 So.3d 813, 836, citing *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507, 572. Accordingly, the statement in question in the reasons for judgment does not provide grounds to reverse the judgment rendered in favor of defendants. This assignment of error is without merit.

## DECREE

For the foregoing reasons, the trial court's October 26, 2020 judgment (as amended on January 25, 2022) which granted the motion for summary judgment filed by defendants, Lt. Troy Cassioppi of the St. John the Baptist Parish Sheriff's Office, and Mike Tregre, in his official capacity as Sheriff of St. John the Baptist Parish, and their liability insurer, American Alternative Insurance Corporation, finding that they are entitled to the application of the discretionary immunity of La. R.S. 9:2798.1 herein, and dismissing them from this suit with prejudice, is affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 26, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-447

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
JASON J. MARKEY (APPELLANT)      LEO J. PALAZZO (APPELLANT)      MARIO A. ARTEAGA, JR. (APPELLANT)
CARL A. BUTLER (APPELLEE)        TIFFANY M. FLEMING (APPELLEE)   JOSE R. RUIZ (APPELLEE)

**MAILED**
KRISTIN M. BARONE (APPELLEE)     DAVID K. GROOME, JR. (APPELLEE)
ATTORNEY AT LAW                  ROBERT E. KERRIGAN, JR. (APPELLEE)
2400 VETERANS BOULEVARD          ATTORNEYS AT LAW
SUITE 485                        755 MAGAZINE STREET
KENNER, LA 70062                 NEW ORLEANS, LA 70130